# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>JORDAN MICHAEL REFFETT and<br>NICOLE MARIE REFFETT,<br><br>Debtors. | Case No. 15-01945-FPC7<br><br>**NOT FOR PUBLICATION** |
| GARY GOODWIN,<br><br>Plaintiff,<br><br>vs.<br><br>JORDAN MICHAEL REFFETT and<br>NICOLE MARIE REFFETT,<br><br>Defendants. | Adversary No. 15-80041-FPC<br><br>MEMORANDUM DECISION |

## INTRODUCTION

Jordan and Nicole Reffett filed a chapter 7 bankruptcy petition in May 2015 seeking to discharge their consumer debt. Their discharge was granted on September 10, 2015. On August 13, 2015, creditor Gary Goodwin, commenced this adversary proceeding seeking a declaration that the Reffetts' judgment debt, arising

MEMORANDUM DECISION ~ Page 1

from a breached purchase and sale agreement between the Reffetts and Goodwin, is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). Defendants, Jordan and Nicole Reffett, filed a motion to dismiss. Following a hearing, the court denied the motion to dismiss on January 26, 2016. A trial was held on May 12, 2016. The plaintiff, Mr. Goodwin, and defendant, Mr. Reffett, appeared pro se and testified. Plaintiff's exhibits 9, 10, 11 and 12 were admitted into evidence without objection. This matter is ready for decision.

This court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334(b). This is a core proceeding to determine dischargeability of a particular debt under 28 U.S.C. § 157(b)(2)(I). This memorandum decision includes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 (applying Fed. R. Civ. P. 52 in adversary proceedings). For the reasons set forth below, an order shall be entered denying Mr. Goodwin's request to except his claim from discharge.

**FACTUAL BACKGROUND**

As a preface, this court notes that it has generously construed the pro se parties' handwritten, unformatted, uncaptioned letters to the court as formal pleadings. The court finds both parties credible.

After successfully owning and operating a business, Downtown Loan Company, for many years, Mr. Goodwin decided to sell his business and use the

proceeds to fund his retirement. Mr. and Mrs. Reffett were interested in purchasing Downtown Loan Company from Mr. Goodwin. As part of the negotiation and sale process, Mr. Goodwin asked Mr. Reffett about his finances and credit history. Mr. Reffett provided him with a credit report he obtained from TransUnion. (Exh. 11). Mr. Reffett also provided wage earning statements from Farmers Insurance Agency where Mr. Reffett was employed at the time. (Exh. 12). According to Mr. Goodwin's testimony, the positive credit report and wage statements made him believe that Mr. Reffett wanted to purchase the business and had the ability to perform under the terms of the Purchase and Sale Agreement. Mr. Goodwin testified that he did not ask Mr. Reffett about whether Mr. Reffett had other debt or investments.

In August of 2012, the Reffetts entered into a Purchase and Sale Agreement with Mr. Goodwin. In the Purchase and Sale Agreement, the Reffetts agreed to pay Mr. Goodwin $346,500. (Exh. 10). According to the terms of the Purchase and Sale Agreement, Mr. Goodwin would carry the contract, requiring twenty percent down (although only five percent was due at the time of closing). The Reffetts agreed to pay the remaining contract balance in monthly payments of $2,000 until paid in full.

It is not disputed that sometime thereafter the Reffetts stopped making payments to Mr. Goodwin, thereby defaulting under the terms of the Purchase and Sale Agreement. Mr. Goodwin pursued a breach of contract action against the

Reffetts. Mr. Goodwin obtained a default judgment against the Reffetts in the Grant County Superior Court of the State of Washington in the amount of $272,142.44. The Reffetts subsequently filed for bankruptcy in May of 2015. Mr. Goodwin timely filed this adversary action seeking a determination that the judgment amount owed to him by the Reffetts is excepted from the Reffetts' bankruptcy discharge, pursuant to 11 U.S.C. § 523(a)(2)(A), because the judgment resulted from money and property being obtained by false representations.

At trial Mr. Goodwin argued that by signing the Purchase and Sale Agreement, the Reffetts falsely represented their ability and intent to fulfill the contract. According to Mr. Goodwin, the Reffetts knew they were going to default under the loan and never intended to perform. To support his position, Mr. Goodwin indicated that the Reffetts had significant other investments and debt about which Mr. Goodwin was unaware. Therefore, according to Mr. Goodwin the money owed to him by the Reffetts should not be discharged in bankruptcy because in making the decision to sell them his business he relied on the Reffett's false misrepresentations.

Mr. Reffett testified that he provided the information that Mr. Goodwin requested. Mr. Reffett stated that when the Purchase and Sale Agreement was entered into he had a good job, good credit, and good investment property. However, his financial situation changed significantly the next year. Mr. Reffett testified that he lost his job in April of 2013. He then attempted to liquidate the store's inventory

and other assets in order to fulfill his obligations to Mr. Goodwin and others. Unable to fulfill their obligations, the Reffetts filed for bankruptcy. Mr. Reffett testified it was never his intent to default under the Purchase and Sale Agreement, file for bankruptcy, or "lose everything." He stated that he felt "very bad" for Mr. Goodwin, but that he had not engaged in any fraudulent behavior.

## DISCUSSION

A debt for money or property "obtained by false pretenses, a false representation, or actual fraud" is nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(2)(A). However, a mere failure to perform or pay as promised, by itself, is not sufficient to supply the necessary factual basis to support a legal determination of nondischargeability under this discharge exception. Otherwise, almost all debts resulting from the failure to comply with a contract would be sufficient to establish nondischargeability. Rather, for a breach of contract action to rise to the level of fraud and be excepted from bankruptcy discharge, the creditor must establish that the debtor entered into the contract never intending to comply with the contractual terms. *See In re Yaikian*, 508 B.R. 175 (Bankr. S. D. Cal. 2014) ("failure to perform as promised, standing alone, gives rise to a case for breach of contract, *not* actionable fraud") (emphasis added).

Thus, in a nondischargeability claim the burden falls on the creditor. To succeed in a § 523(a)(2)(A) action, the creditor must establish by a preponderance of

evidence, the following elements: (1) the debtor made representations; (2) the debtor knew those representations to be false at the time they were made; (3) the debtor made those representations with the intent to deceive the creditor; (4) the creditor justifiably relied on the debtor's representations; (5) the creditor sustained damages as a proximate result of those representations. *Gomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010). The court notes that the creditor's burden in conjunction with the "fresh start" policy of the Bankruptcy Code, creates a sizeable obstacle for creditors to overcome in order to prevail on a nondischargeability complaint. In this case, Mr. Goodwin has not met his burden.

### I.     Misrepresentations

To establish the first and second elements, Mr. Goodwin must demonstrate that during the process of selling his business to the Reffetts, that the Reffetts made representations they knew were false or made statements with a reckless disregard of their truth. *In re Sabban*, 600 F.3d at 1222; *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 167 (B.A.P. 9th Cir. 1999). "A representation may be fraudulent, without [actual] knowledge of its falsity, if the person making it 'is conscious that he has merely a belief in its existence and recognizes that there is a chance, more or less great, that the fact may not be as represented.'" *In re Gertsch*, 237 B.R. at 168 (quoting Restatement (Second) of Torts § 526 cmt. e (1977)).

MEMORANDUM DECISION ~ Page 6
15-80041-FPC    Doc 37    Filed 05/27/16    Entered 05/27/16 14:08:21    Pg 6 of 10

Mr. Goodwin failed to demonstrate that the Reffetts made misrepresentations about their ability or intent to perform under the Purchase and Sale Agreement. In fact, Mr. Goodwin did not allege that any information requested from, or provided by, the Reffetts prior to the purchase was in any way false, changed, or intentionally misleading. Rather, Mr. Goodwin's only argument is that by signing and then defaulting under the Purchase and Sale Agreement, the Reffetts falsely misrepresented their ability and intent to fulfill the contract. Essentially Mr. Goodwin appears to be arguing that the Reffetts should have known at the time of entering into the Purchase and Sale Agreement that their financial situation was going to change significantly and they would be unable to perform under the contract.

The court finds that prior to selling his business to the Reffetts, Mr. Goodwin requested credit references from Mr. Reffett. In response, Mr. Reffett obtained and provided Mr. Goodwin with a credit report from TransUnion. Mr. Goodwin does not allege that the credit report he received was changed or altered by Mr. Reffett, nor does the court find any such evidence. Mr. Reffett also provided wage earning statements showing his wages as an employee of Farmers Insurance. Again, Mr. Goodwin does not allege that Mr. Reffet misrepresented his earnings. Although Mr. Goodwin appears to allege that Mr. Reffett misrepresented his financial health by failing to list his other debt obligations, Mr. Goodwin admitted that he never

asked Mr. Reffett about his debt. The court does not minimize the loss incurred by Mr. Goodwin because of the Reffetts' failure to perform under the terms of the Purchase and Sale Agreement (indeed, the court is highly sympathetic to Mr. Goodwin). However, from the evidence presented, Mr. Goodwin has not shown that the Reffetts made statements prior to entering into the Purchase and Sale Agreement that they knew were false or with a reckless disregard of their truth.

## II. Intent to Deceive

Intent to deceive may be inferred from the totality of circumstances. "A court may infer the existence of the debtor's [deceptive] intent . . . if the facts and circumstances . . . present a picture of deceptive conduct by the debtor." *Citibank (S.D.), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1087 (9th Cir. 1996). "The debtor's assertions of an honest intent must be weighed against natural inferences from admitted facts." *In re Sharma*, No. ADV LA 11-01555 PC, 2013 WL 1987351, at *10 (B.A.P. 9th Cir. May 14, 2013) *aff'd*, 607 F. App'x 713 (9th Cir. 2015) (internal citation omitted). "A court may also infer intent to deceive where the debtor makes a false representation that the debtor knows, or should know, will induce the creditor to make a loan." *Id*.

In this case, Mr. Goodwin provided no evidence that the Reffetts made false representations to induce him to enter into the Purchase and Sale Agreement. Although testimony established that the Reffetts' financial situation changed

significantly after entering into the contract with Mr. Goodwin, there was no evidence demonstrating that at the time of entering into the Purchase and Sale Agreement that the Reffetts (1) knew their financial situation was deteriorating or going to deteriorate; (2) knew they would default under the Purchase and Sale Agreement; or (3) intended to default under the contract. Mr. Goodwin's allegations that the Reffetts somehow should have known that they would not be able to perform under the Purchase and Sale Agreement is not supported by the evidence. Contrary to Mr. Goodwin's allegations, the court does not find that the Reffetts made misrepresentations with the intent to deceive and induce Mr. Goodwin into selling them his business.

### III.  Justifiable reliance

Justifiable reliance is a subjective standard that turns on a person's knowledge under the particular circumstances. *In re Eashai*, 87 F.3d at 1090. "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Id*. The justifiable reliance standard generally does not entail a duty to investigate, and a person may be justified in relying on a representation of fact even if he might have ascertained the falsity of the representation had he investigated. *See Field v. Mans*, 516 U.S. 59, 70 (1995).

To prevail on this element, Mr. Goodwin must demonstrate that he justifiably relied on misstatements made by the Reffetts. Because Mr. Goodwin failed to establish the Reffetts made false statements, he cannot establish that he justifiably relied on such misstatements. Therefore, the court finds Mr. Goodwin is unable to satisfy this element of the claim.

**IV. Damages**

The court does not dispute that Mr. Goodwin sustained losses and damage as a proximate result of the Reffetts' default under the terms of the Purchase and Sale Agreement. However, the damage resulted from a breach of contract and is not due to fraudulent actions by the Reffetts.

## **CONCLUSION**

After carefully considering the record, the law, and the testimony of the parties, the court finds that Mr. Goodwin has not met his burden of proof. Mr. Goodwin has not established, by a preponderance of the evidence, that the Reffetts intended to defraud him or that the Reffetts intentionally provided false information. The record in this case illustrates that the Reffetts' failure to perform under the Purchase and Sale Agreement does not give rise to an action in fraud. Therefore, the court will enter an order denying Mr. Goodwin's request that the Reffetts' debt be excepted from discharge.

///END OF MEMORANDUM DECISION///

MEMORANDUM DECISION ~ Page 10

15-80041-FPC    Doc 37    Filed 05/27/16    Entered 05/27/16 14:08:21    Pg 10 of 10